UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TIM DOKTOR,

                      Plaintiff,

        -against-                        CV 10-2332

WERNER CO., OLD LADDER CO., NEW      (Wexler, J.)
WERNER CO., WERNER COMPANY INC.,
and HOME DEPOT USA, N.A.

                     Defendants.
----------------------------------------------------------X
APPEARANCES:

    SULLIVAN PAPAIN BLOCK McGRATH & CANNAVO P.C.
    BY: FRANK V. FLORIANI, ESQ.
    Attorneys for Plaintiff
    120 Broadway
    New York, New York 10271

    LEWIS BRISBOIS BISGAARD & SMITH LLP
    BY: CAROLYN COMPARATO, ESQ.
    Attorneys for Defendants
    77 Water Street, Suite 2100
    New York, New York 10005

WEXLER, District Judge

    This is a personal injury case removed from the Supreme Court of the State of New York on the basis of diversity of citizenship. Plaintiff Tim Doktor ("Plaintiff"), seeks compensation for injuries he suffered after falling from a ladder he states to have been manufactured and marketed by certain of the Defendants. Named as Defendants are Werner Co., Old Ladder Co., New Werner Co., Werner Company, Inc. (collectively the "Werner Defendants") and Home Depot USA, N.A. ("Home Depot"). Presently before the court is the Werner Defendants'

1

motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss. For the reasons that follow, the motion is denied at this time. The Werner Defendants are granted leave to move for summary judgment after the completion of the discovery described below.

## BACKGROUND

### I. Facts and the Allegations of the Complaint

Plaintiff is a home contractor. He states that he was injured on April 18, 2008, when he fell from a ladder alleged to have been manufactured by one of the Werner Defendants, and sold by Defendant Home Depot. Plaintiff's complaint identifies the ladder as a "Werner Electro-master" "Model FS206S" (the "Ladder"). Each of the Werner Defendants, served at the same Pennsylvania address, is alleged to have designed, manufactured, tested, distributed and sold the Ladder. Plaintiff's complaint sets forth product liability causes of action for breach of warranty and defective design.

### II. The Motion to Dismiss

All Werner Defendants move to dismiss. The motion relies, inter alia, on an affidavit of an engineer formerly employed by the manufacturer of the Ladder. That affidavit states the date of the manufacture of the Ladder, and uses that information to establish the fact that the Ladder was manufactured by a now-bankrupt company. The assets of the bankrupt company have since been sold to a company that uses the Werner name, but purchased the bankrupt company's assets pursuant to a court-approved asset purchase agreement which expressly excludes successor liability. The motion argues that this set of facts establishes that there can be no liability for any of the Werner Defendants. The court discusses the facts alleged in support of the motion, as well as the merits thereof below.

2

# DISCUSSION

## I. Facts Alleged and the Basis of the Motion

### A. The Corporate Entities

As noted, there are four separate entities comprising what the court and the parties refer to as the "Werner Defendants." As to those entities, the following facts are either agreed to by the parties or supported by public documents that are appropriate to consider in the context of this motion.

First, prior to 2006, there was an entity known as Werner Co., whose official name was Werner Co., (PA) ("Werner Co. PA"). Werner Co. PA filed for bankruptcy protection under Chapter 11 on June 12, 2006, in the United States Bankruptcy Court for the District of Delaware. Following this filing, Werner Co. PA, changed its name to Old Ladder Co., Inc. ("Old Ladder"). Old Ladder, the bankrupt entity, was eventually liquidated and is now a Liquidated Trust. Pursuant to an asset purchase agreement (the "APA"), which is before the court, the assets of Old Ladder (the debtor) were sold to a new entity. The new entity adopted the Werner name and, on May 18. 2007, was incorporated as Werner Co. ("Werner Co."). Defendants inform the court that "New Werner Co." is a fictitious name pursuant to which Werner Co. is qualified to do business in certain states.

The terms of the APA, transferring the assets of Old Ladder to Werner Co., were approved by order of the Bankruptcy Court (the "Bankruptcy Court Order"). The Bankruptcy Court Order provides specifically that the assets of the debtor were being sold to Werner Co. free and clear of all encumbrances. Further, the APA states expressly that Werner Co. would not, by its purchase of assets, assume or retain any liabilities except for those expressly set forth in the

3

APA, which exceptions do not include liability for the injuries alleged herein.

B. <u>The Manufacture of the Ladder</u>

As noted, Plaintiff has supplied the name and model number of the Ladder. Plaintiff has also produced a picture thereof. In support of this motion, Defendants submit the affidavit of an engineer previously employed by Old Ladder, the company that Defendants state manufactured the Ladder. That affidavit states that the Ladder could only have been manufactured between 1995 and 2000. The affidavit states further that the stamp appearing on the Ladder which reads "05-9744G01FFA," establishes that the Ladder was manufactured in May of 1997. This date of manufacture is stated to be established by the facts that the first two numbers, "05" establish the month of manufacture, and the following numbers "97" establish the year of manufacture. Defendants' affiant states further that the identification label produced by Plaintiff was not in use after 1997, when it was replaced by a label employing a different a graphic design.

C. <u>Basis of the Motion and Plaintiff's Response</u>

The Werner Defendants argue that the facts set forth above entitle them to dismissal. First, as there was never any entity known as "Werner Company Inc." Defendants seek to have this entity dismissed. The remaining Werner Defendants seeks dismissal on the merits on the ground that: (1) it has been established that the Ladder was manufactured in 1997 by Old Ladder; (2) Old Ladder is now bankrupt, and (3) the assets of the bankrupt entity have been sold to Werner Co. free and clear of any successor liability. In response to the motion, Plaintiff asserts that it is inappropriate, in the context of a motion to dismiss, to rely on a factual affidavit attesting to the year of manufacture of the Ladder. Plaintiff further argues that he is entitled to take discovery on this issue, as well as with respect to the issue of successor liability.

4

## II. Legal Principles: Successor Liability

New York law provides clearly that a corporation that purchases the assets of another corporation is generally not liable for the liabilities of the seller. Douglas v. Stamco, 2010 WL 337043 *1 (2d Cir. 2010); New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006); see Semenetz v. Sherling & Walsen, 818 N.Y.S.2d 819, 820 (2006). Instead, successor liability attaches only where one of four established exceptions is present. Specifically, successor liability exists if: (1) the purchaser expressly or impliedly assumes its predecessor's tort liability; (2) there was a consolidation or merger of seller and purchaser; (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape successor liability. Douglas, 2010 WL 337043 at *1; Nat'l Serv. Indus., Inc., 460 F.3d at 209; Hayes v. Equality Specialities, 2010 WL 3817554 *5 (S.D.N.Y. 2010); Desclafani v. Pave-Mark Corp., 2008 WL 3914881 *3 (S.D.N.Y. 2008).

Plaintiff here argues that there has been a "de facto merger" or "mere continuation" of the seller's business. Although referred to separately, theses exceptions are similar. Cargo Partner AG v. Albatrans, Inc. 352 F.3d 41, 45 n. 3 (2d Cir.2003). Both consider whether "a transaction, although not in form a merger, is in substance a consolidation or merger of seller and purchaser." Nat'l Serv. Indus., 460 F.3d at 209. Relevant to the court's inquiry on this matter is whether there was: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." Id.

5

Where the successor corporation purchases the assets of a bankrupt entity, it is appropriate to look to the relevant purchase documents, and to consider the policies of the bankruptcy laws when determining the successor liability issue. An asset purchase agreement that specifically negates facts that might otherwise support successor liability is entitled to enforcement. See Douglas, 2010 WL 337043 *2. Importantly, judicial enforcement of a negotiated "free and clear" asset sale furthers the policies of the bankruptcy laws which encourage sales that maximize the value of the estate for all creditors. Id. Thus, proceeds from such free and clear sales are "immune from subsequent suits" against the asset purchasing company. Peralta v. WHM Tool Group, Inc., 2005 WL 2002454 *2 (E.D.N.Y. 2005). Moreover, courts recognize that allowing a free and clear sale increases the purchase price of assets, "because without this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property." In re Gucci, 126 F.3d 380, 387 (2d Cir. 1997); see also Douglas, 2010 WL 337043 *1 (recognizing "free and clear" sale as "a crucial inducement" to the sale and the "chilling effect" of allowing a tort claim to proceed subsequent to such a sale); Cargo Partner AG v. Albatrans Inc., 207 F. Supp.2d 86, 112 (S.D.N.Y. 2007) (recognizing that imposition of successor liability would discourage asset sales and thereby decrease the overall amount of money available to creditors).

III. Disposition of the Motion

As noted, Plaintiff opposes the motion on the grounds that consideration of the factual affidavit establishing the Ladder's year of manufacture is inappropriate. Plaintiff further argues that if given the opportunity he will establish, through discovery, the existence of successor

liability. The court considers first the issue of whether Plaintiff has created the required issue of fact as to the existence of successor liability.

A. <u>Successor Liability of the Werner Defendants</u>

The court holds that the uncontroverted facts regarding: (1) the bankruptcy of Werner Co. PA; (2) its re-naming as Old Ladder, and (3) the sale of Old Ladder's assets to Werner Co., are not in dispute. These facts, considered along with the successor liability language of the APA, and the Bankruptcy Court Order, are dispositive with respect to the issue of successor liability.

First, the corporate realities of the asset sale preclude a finding of liability under a "defacto merger," or "mere continuation" theory of successor liability. As noted, such theories require a plaintiff to prove, <u>inter alia</u>, continuity of ownership and dissolution of the acquired corporation. Continuity of ownership exists where shareholders of the selling corporation become direct or indirect shareholders of the purchasing corporation. Such common ownership does not exist where, as here, there is a sale of assets for cash. See, e.g., Desclafani 2008 WL 3914881 *4; Peralta, 2005 WL 2002454 *3. Plaintiff's argument also fails because Plaintiff cannot show dissolution of the seller. Old Ladder continues to exist as a distinct corporate entity, even after the consummation of the APA, as a liquidated trust. Where, as here, "the predecessor corporation continues to exist after the transaction, in however gossamer a form, the mere continuation exception is not applicable." Desclafani, 2008 WL 3914881 *5, quoting, <u>Diaz v. South Bend lathe Inc.</u>, 707 F. Supp. 97, 100 (E.D.N.Y. 1989); <u>see</u> also <u>Schumacher v. Richards Shear Co., Inc.</u> 464 N.Y.S.2d 437, 440 (1983) (where seller under asset purchase agreement continues to exist "as a distinct, albeit meager entity" mere continuation theory of successor liability is defeated). The continued existence of Old Ladder precludes reliance on the mere

7

continuation theory of successor liability.

Plaintiff also appears to argue in favor of imposing successor liability based upon the continued marketing of a predecessor's defective product. Any such argument is foreclosed by the decision of the New York Court of Appeals in Semenetz, which rejected any holding that would extend traditional theories of successor liability to impose strict product liability on "a party that did not put [the product at issue] into the stream of commerce." Semenetz, 818 N.Y.S.2d at 823; see also National Serv. Indus., 460 F.3d at 214.

The fact that the asset sale here took place pursuant to a bankruptcy court proceeding raises a policy matter that strengthens the court's conclusion regarding successor liability. The Second Circuit has recognized clearly the importance of free and clear sales, and their ability to increase the value of the estate and benefit all creditors. See Douglas, 2010 WL 337043 *1. Allowing Plaintiff to pursue a claim against a company that purchases the assets of a bankrupt entity would not only discourage such sales but also allow Plaintiff's low-priority unsecured claim to rise above claims of other creditors. Id.

B. Facts Regarding The Ladder's Manufacture

The court's discussion above makes clear that if the Ladder was manufactured by a bankrupt entity, successor liability cannot be imposed on the purchaser of that entity's assets. Dismissal of this action, however, is dependent upon a finding that the Ladder was, as the Werner Defendants state, manufactured by Old Ladder. Such a finding requires this court to consider, and credit, the factual affidavit submitted by the Werner Defendants. As much as that affidavit appears to make sense, it would be inappropriate for the court to consider its factual conclusion in the context of this motion to dismiss.

The court holds, therefore, that despite its holding with respect to successor liability, it would be premature to dismiss this case without at least affording Plaintiff the opportunity to complete discovery as to the factual issue concerning the date of manufacture and identity of the company that manufactured the Ladder. While a court considering a motion to dismiss may properly consider documents such as the Bankruptcy Court Order here, it may not decide issues of fact such as that presented by the Old Ladder employee affidavit. The court therefore denies the motion to dismiss, and grants Plaintiff the opportunity to take discovery as to the date of manufacture and identity of the company that manufactured the Ladder. Such discovery will be aimed at determining whether the facts concerning the Ladder are, indeed, as set forth in the Werner Defendants' affidavit. Upon completion of such discovery, the Werner Defendants may, if deemed appropriate, move for summary judgment.

## CONCLUSION

For the foregoing reasons the motion to dismiss is denied at this time. The parties are to continue with discovery as described above. The Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED.

/s/ LEONARD D. WEXLER
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
January 4, 2011